*Wadsworth*, for appellant.

*Roselius* and *McMillen*, for appellee.

EASTERN DIS.
*May*, 1833.

KEENE
*vs.*
LIZARDI
ET ALS.

———————

## KEENE *vs.* LIZARDI ET ALS.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The master of a vessel is liable for the indecent and inhumane conduct of himself, and of his crew, excited by him towards a passenger.

Owners of vessels carrying passengers for money, are subject to the same responsibility for a breach of duty by their officers to the passengers, as they would be in regard to merchandise committed to their care.

The facts are fully stated in the opinion of the court, delivered by PORTER, J.

The petition states, that the plaintiff and his wife embarked at Vera Cruz, as cabin passengers, on board a schooner belonging to the defendants, bound to the port of New-Orleans. That the vessel had on board a nominal commander called Narciso Fernandez, but that the real and effectual commander was one Manuel Gastanaga, who was entitled the *piloto*. That the said piloto, virtually and effectually the sole and absolute commander of said vessel during said voyage, availed himself of every occasion to violate, not only the rules of decency, decorum and respect, but also to

EASTERN DIS.
May, 1833.

KEENE
vs.
LIZARDI
ET ALS.

outrage humanity itself towards the petitioner and his wife, and to expose their very lives to be sacrificed to his unofficer-like and atrocious conduct. That, furthermore, to gratify his fiend-like malignity and brutality, he, the said piloto, spoke also of the wife of the plaintiff, in the hearing of all his crew, as if to stimulate them to personal outrage against her, as not being the wife, but the *mistress* or *prostitute* of the plaintiff, and finally, that during the space of fourteen days, owing to the atrocities of the *piloto*, the petitioner and his wife were in constant apprehension of being assassinated. The damages are laid at twenty thousand dollars, and it is averred that the defendants as owners of the vessel, are responsible for the acts of their agents.

The defendants filed a peremptory exception, in which they denied that they were responsible to the plaintiff on the facts alleged by him. The court below sustaining the exception. The judge admitted the owners were responsible for loss occasioned by the neglect, and even by the torts of their agents, but that they were not responsible for malicious and defamatory expressions of the officers on board.

For the purposes of this inquiry, all the facts and allegations contained in the petition, must be taken as true. It, therefore, appears, the officer in command of the vessel, treated the petitioner and his wife, inhumanely and indecently, that he did not extend to them that protection and care which is usual, that he stimulated his crew to commit outrages on them, and that during the space of fourteen days, they were, in consequence of his conduct, in constant danger of their lives.

The questions, therefore, are whether the officer himself would be liable to an action for such conduct? and if he would, whether the owners of the vessel are responsible for his acts?

*The master of a vessel is liable for the indecent and inhumane conduct of himself, and of his crew, excited by him towards a passenger.*

I. And on the first question we are clearly of opinion, that if such acts as are admitted by this exception, were proved in evidence, the master would be responsible in damages to the parties injured. We were about to express our own ideas on the obligations of masters to passengers, when we

EASTERN DIS.
May, 1833.

KEENE
vs.
LIZARDI
ET ALS.

fell on a case not cited on the argument, where the law on this subject is so clearly stated, and in language so much more forcible than any we could employ, that we shall resort to it as expressing fully our ideas on this subject. In the case of *Chamberlain* vs. *Chandler*, reported in 3 *Mason, p.* 142. Judge Story says, "In respect to passengers the case of the master is one of peculiar responsibility and delicacy. Their contract with him is not for mere ship room, and personal existence on board, but for reasonable food, comforts, necessaries, and kindness. It is a stipulation not for toleration merely, but for respectful treatment, for that decency of demeanor which constitutes the charm of social life, for that attention which mitigates evils without reluctance, and that promptitude which administers aid to distress. In respect to females, it proceeds yet farther, it includes an implied stipulation, against general obscenity, that immodesty of approach which borders on lasciviousness, and against that wanton disregard of the feelings which aggravates every evil, and endeavors by the excitement of terror and cool malignancy of conduct to inflict torture on susceptible minds." After noticing the argument that the acts complained of, though wrong in morals, were not cognisable by law, he observes, "my opinion is the law involves no such absurdity. It is rational and just. It gives compensation for mental suffering, occasioned by acts of wanton injustice, equally, whether they operate by way of direct or consequential damage." If the principles here so eloquently expounded, and which we think must receive the ready assent of every sound head, and of every pure heart, required the further weight of authority to give their sanction, we have that authority in Chancellor Kent. "The duties of the master, (he says) and particularly the necessity of kind, decorous and just conduct on the part of the captain to the passengers and crew under his charge, and the firm purpose with which courts of justice punish in the shape of damages every gross violation of such duties, are no where more forcibly stated than in the case of *Chamberlain* vs. *Chandler*," 3 *Kent's Commen. ed.* 1832, 160.

Owners of vessels carrying passengers for money, are subject to the same responsibility for a breach of duty by their officers to the passengers, as they would be in regard to merchandise committed to their care.

II. On the second point, the exposition just given of the duties of the master, in relation to the passengers, renders it easy to ascertain the extent of the responsibility of the owners for a breach of those duties. The law is clear and perfectly well settled, that owners of vessels are responsible for all acts of the master, while acting within the scope of his duties, even for his torts. When the proprietors of vessels use them for the purpose of carrying passengers for money, they subject themselves to the same responsibility for a breach of duty in their officers to those passengers, as they would for their misconduct in regard to merchandise committed to their care. No satisfactory distinction can be drawn between the two cases.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled, and it is further ordered, that the exception filed in this case be overruled and set aside, that the case be remanded to the District Court, to be proceeded in according to law, and that the appellees pay the cost of this appeal.

*Appellant, in propria persona.*

*C. De Armas,* for appellees.