KANSAS CITY SOUTHERN RY. CO. v. WILLSIE. †

(Circuit Court of Appeals, Eighth Circuit. July 7, 1915.)

No. 4423.

1. CARRIERS ⚖➔247—CARRIAGE OF "PASSENGERS"—WHO ARE.

In view of Kirby's Dig. Ark. § 6613, declaring that all passengers who do not procure regular tickets shall be transported over all railroads at the same price charged for such tickets, plaintiff, who repaired to the station of the defendant railroad company to take passage on its train but did not buy a ticket because informed that none would be sold, was, while waiting to get on board, a passenger entitled to protection as such, and, having been injured, defendant cannot complain that the court submitted to the jury the question whether plaintiff was a passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 984–993; Dec. Dig. ⚖➔247.

For other definitions, see Words and Phrases, First and Second Series, Passenger.]

2. CARRIERS ⚖➔283—CARRIAGE OF PASSENGERS—LIABILITY FOR ACTS OF SERVANTS.

Where a brakeman on defendant's train placed a torpedo which he found at the station on the track to see whether it would explode and it did, injuring a passenger, the carrier was liable; for a carrier is bound to protect its passengers from the assaults of its own servants even when they are malicious or aggressive and are without the scope of the servant's duties.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1119–1124, 1140, 1141; Dec. Dig. ⚖➔283.]

3. CARRIERS ⚖➔302—INJURIES TO PERSONS AT STATION—LIABILITY OF CARRIER.

Where a passenger standing on defendant's station was injured by a torpedo placed on the track, and exploded by the train, defendant is liable under Kirby's Dig. Ark. § 6773, declaring that all railroads shall be responsible for all damages to persons and property done or caused by the running of trains.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1221–1223; Dec. Dig. ⚖➔302.]

4. TRIAL ⚖➔105—ADMISSION OF EVIDENCE—MOTION TO STRIKE.

Where defendant did not move to strike the testimony or request an instruction to the jury to disregard it, it cannot complain that such testimony might have been misleading.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 260–266; Dec. Dig. ⚖➔105.]

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied September 27, 1915.

5. APPEAL AND ERROR ⬤→1004—WRIT OF ERROR—MATTERS REVIEWABLE.

 On writ of error, the question of the excessiveness of a verdict cannot be reviewed.

 [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. ⬤→1004.]

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by J. W. Willsie against the Kansas City Southern Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

James B. McDonough, of Ft. Smith, Ark. (S. W. Moore, of Kansas City, Mo., on the brief), for plaintiff in error.

James D. Head, of Texarkana, Ark., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. The parties to this writ of error will be named as at the trial. On September 25, 1913, the plaintiff walked from his home in Little River county, Ark., to a station on defendant's road called Winthrop, a distance of about four miles, for the purpose of taking passage on a local freight train for Wade, another station on a branch line of defendant. Plaintiff arrived at Winthrop station about 9 o'clock a. m., at about the time the train was running up. The train was standing at the middle of the depot. The caboose was south of the depot. The train was a local freight which carried passengers. Plaintiff had made several trips to Wade before on this same train, had paid cash fare at those times, and had money to pay his fare on this occasion. Plaintiff was told by the agent prior to the present proposed trip that defendant did not sell tickets to Wade. Plaintiff was standing on the station platform which was made of gravel waiting for the caboose to pull up so that he could get on. He was on the west side of the track about seven or eight feet distant. On the other occasions that he had taken this same train the caboose had stopped here.

[1] While so standing, a brakeman of the defendant employed on this same train placed a torpedo on one of the rails of the track on which the train stood and under one of the car wheels. There was an explosion when the car moved soon thereafter, which threw a piece of gravel or tin into the left eye of plaintiff knocking him down and causing injury. The brakeman testified that he took the torpedo from the platform and that it looked as if it had been exploded; that he placed it on the track to see if it had been exploded; that he did not place it on the track in connection with his work on the train. At the close of all the evidence counsel for the defendant made a motion for a directed verdict in its favor. The motion was overruled and an exception taken. There was a verdict and judgment for plaintiff. It is insisted by counsel for defendant that the plaintiff under the evidence was not a passenger. We think the weight of authority is decidedly in favor of the proposition that when the plaintiff repaired to the station of the defendant at

Winthrop under the circumstances detailed in the evidence in goo⸍ faith intending to become a passenger, and having the money to p⸴ his fare, he in law and fact became a passenger and was entitled protection as such. Chicago, Rock Island & Pacific Railroad Co Stepp, 164 Fed. 785, 90 C. C. A. 431, 22 L. R. A. (N. S.) 350 (8th Cι⸴ cuit) ; Moore on Carriers, vol. 2 (2d Ed.) §§ 8 and 9 ; 2 Cooley on Torts (3d Ed.) p. 1364 ; 3 Thomp. Neg. 2638 ; 2 Hutchinson, Carriers (3d Ed.) 1006, 1009 ; Grimes v. Pennsylvania Co. (C. C.) 36 Fed. 72 ; Riley v. Vallejo Ferry Co. (D. C.) 173 Fed. 331 ; Atlantic City Ry. Co. v. Clegg, 183 Fed. 216, 105 C. C. A. 478 ; Railway Co. v. Hutchinson, 101 Ark. 424, 142 S. W. 527 ; Railroad Co. v. Watson, 102 Ark. 499, 144 S. W. ·922 ; Metcalf v. Railway Co., 97 Miss. 455, 52 South. 355, 28 L. R. A. (N. S.) 311 ; 6 Cyc. 536 ; Krantz v. Railway Company, 12 Utah; 104, 41 Pac. 717, 30 L. R. A. 297 ; Harris v. Stevens, 31 Vt. 79, 73 Am. Dec. 337.

As bearing upon the question of purchasing a ticket, Kirby's Digest, § 6613, reads as follows :

"All passengers who may fail to procure regular fare tickets shall be transported over all railroads in this state at the same rate and price charged for such tickets for the same service."

In Railway Company v. Kilpatrick, 67 Ark. 47, 54 S. W. 971, and Railroad v. Blythe, 94 Ark. 153, 126 S. W. 386, 29 L. R. A. (N. S.) 299, it is decided that, in the absence of any rule requiring the purchase of a ticket before entering the train, the passenger may pay fare upon the train and is entitled to the rights of a passenger if he intends to pay his fare when called upon. There is no evidence in the record that such a rule existed in the present case. The trial court left it to the jury to say whether under the circumstances the plaintiff was a passenger at the time of his injury. We think in so doing the trial court was as favorable to the defendant as it could ask.

[2] It is next insisted that the evidence showed that in placing the torpedo upon the track the brakeman was not engaged in the performance of any business of the defendant; therefore his act was beyond the scope of his employment and the defendant is not liable therefor. The present state of the law in relation to the question presented is well stated in section 26, vol. 2, Moore on Carriers, p. 1148, as follows :

"Although the generally accepted doctrine of the courts in many cases, which seem to have been determined mainly from the responsibilities attaching to the relation of principal and agent or master and servant, has been that a carrier of passengers is liable for the tortious acts of its servants, even when willful or malicious, if done within the scope of their employment, in the latest and best considered cases and writings upon this subject the distinctions which attend the doctrine of respondeat superior are held to be unimportant in view of the absolute nature of the carrier's duty to protect the passenger from the assaults and insults of its own servants during the transit, or, if considered, are applied with a very strong bias against the master, even where the servant's acts appear to be aggressive, wanton, and malicious. The more acceptable rule now seems to be that a common carrier is liable to any one sustaining the relation of passenger to it for an injury resulting from any acts of its servants or employés, whether willful and malicious or not, and even though such acts are not done in the course or within the scope of the servants' or agents' employment; the rule that the master is not liable for injury resulting from the willful and malicious acts of his agents, not done

within the scope of their employment, is not applicable when the injury is inflicted upon a passenger by the carrier's agents or servants. The carrier is liable in such cases because the act is violative of the duty and a breach of the obligation it owes through the servant to the passenger, and not upon the idea that the act is incident to a duty within the scope of the servant's employment; and it is manifestly immaterial that the act may have been of private retribution on the part of the servant, actuated by personal malice toward the passenger and having no attribute of service to the carrier in it. The rule in England and in some of the states in this country is to the contrary, however, and it is held that no liability is incurred by the carrier for an injury to a passenger by the willful or malicious tort of its servant, unless the act was done while he was acting within the scope of his employment."

The above language is fully sustained by the authorities cited in support thereof. In addition we cite the following: Railway Company v. Hutchinson, 101 Ark. 424, 142 S. W. 527; 6 Cyc. 600, 601; Neville v. Southern Ry. Co., 126 Tenn. 96, 146 S. W. 846, 40 L. R. A. (N. S.) 995; Krantz v. Railway Co., 12 Utah, 104, 41 Pac. 717, 30 L. R. A. 297; Haver v. Railway Co., 62 N. J. Law, 282, 41 Atl. 916, 43 L. R. A. 84, 72 Am. St. Rep. 647; Georgia R. & B. Co. v. Richmond, 98 Ga. 495, 25 S. E. 565; S. F. & W. R. Co. v. Quo, 103 Ga. 125, 29 S. E. 607, 40 L. R. A. 483, 68 Am. St. Rep. 85; Railway Co. v. Cooper, 6 Ind. App. 202, 33 N. E. 219; Railway Co. v. Divinney, 66 Kan. 776, 71 Pac. 855; O'Brien v. Transit Co., 185 Mo. 263, 84 S. W. 939, 105 Am. St. Rep. 592; Keene v. Lizardi, 5 La. 431, 25 Am. Dec. 197; Williams v. P. P. Car Co., 40 La. Ann. 417, 4 South. 85, 8 Am. St. Rep. 538; Johnson v. Railway, 130 Mich. 453, 90 N. W. 274; Conger v. Railway, 45 Minn. 207, 47 N. W. 788; Railway Co. v. Sanderson, 99 Miss. 148, 54 South. 885, 46 L. R. A. (N. S.) 352; Maleck v. Railway, 57 Mo. 17; Railway Co. v. Luther, 40 Tex. Civ. App. 517, 90 S. W. 44; Railway Co. v. Dean, 98 Tex. 517, 85 S. W. 1135, 70 L. R. A. 943; Fick v. Railway Co., 68 Wis. 469, 32 N. W. 527, 60 Am. Rep. 878; Daniel v. Railway, 117 N. C. 592, 23 S. E. 327, 4 L. R. A. (N. S.) 485; 3 Thomp. Neg. §§ 3190, 3191; Tate v. Railway (Ky.) 81 S. W. 256; Railroad Co. v. Batchler, 32 Tex. Civ. App. 14, 73 S. W. 981; Railroad Co. v. Bowlin (Tex. Civ. App.) 32 S. W. 918; Savannah, etc., R. Co. v. Bryan, 86 Ga. 312, 12 S. E. 307, 22 Am. St. Rep. 464; Railway Co. v. Savage, 110 Ind. 156, 9 N. E. 85; Railroad Co. v. Dowgiallo, 82 Ark. 289, 101 S. W. 412; Terre Haute Railway Co. v. Jackson, 81 Ind. 19; 4 Elliott, Railroads, § 1638; Barrow S. S. Co. v. Kane (C. C. A. 2) 88 Fed. 197, 31 C. C. A. 452; N. J. Steamboat Co. v. Brockett, 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049; Railroad Co. v. Jopes, 142 U. S. 18, 12 Sup. Ct. 109, 35 L. Ed. 919; Clancy v. Barker et al., 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653; 2 White, Personal Injuries on Railroads, § 736; Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611; Hayne v. Union Street Railway Co., 189 Mass. 551, 76 N. E. 219, 3 L. R. A. (N. S.) 605, 109 Am. St. Rep. 655; Harmon v. Flintham (C. C. A. 6) 196 Fed. 635, 116 C. C. A. 309.

Counsel for the defendant cite Goodloe v. Railroad, 107 Ala. 233, 18 South. 166, 29 L. R. A. 729, 54 Am. St. Rep. 67. This case is severely criticized by Mr. Thompson in his work on Negligence (volume 3, § 3190), and in a subsequent case Birmingham Ry. & Electric Co. v.

Baird, 130 Ala. 334, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep 43, the Supreme Court of Alabama practically overruled the case Goodloe v. Railroad, in so far as the question now before the court concerned. What we have heretofore said upon this point has been from the viewpoint of the common law.

[3] Counsel for plaintiff also claims a liability under section 67 of Kirby's Digest, Ark., which reads as follows:

"All railroads which are now or may be hereafter built and operated whole or in part in this state, shall be responsible for all damages to pers and property done or caused by the running of trains in this state."

The following cases decided by the Supreme Court of Arkansas seem to have applied this statute to almost every conceivable injury caused by the running of trains: Railroad v. Blewitt, 65 Ark. 237, 45 S. W. 548; Railway v. Neeley, 63 Ark. 636, 40 S. W. 130, 37 L. R. A. 616; Railway Co. v. Cooksey, 70 Ark. 481, 69 S. W. 259; Railway Co. v. Evans, 80 Ark. 22, 96 S. W. 616; Railway Co. v. Carr, 94 Ark. 251, 126 S. W. 850; Railway Co. v. Davis, 83 Ark. 221, 103 S. W. 603; Railway Co. v. Standifer, 81 Ark. 278, 99 S. W. 81; Railway Co. v. Pitcock, 82 Ark. 443, 101 S. W. 725, 118 Am. St. Rep. 84, 12 Ann. Cas. 582; Railway Co. v. Pollock, 93 Ark. 243, 123 S. W. 790; Railway Co. v. Rhoden, 93 Ark. 32, 123 S. W. 798, 137 Am. St. Rep. 73, 20 Ann. Cas. 915; Railway Co. v. Stell, 87 Ark. 312, 112 S. W. 876; Railway Co. v. Briggs, 87 Ark. 581, 113 S. W. 644; Oliver v. Railway, 89 Ark. 469, 117 S. W. 238; Railway Co. v. Knox, 90 Ark. 1, 117 S. W. 779, 134 Am. St. Rep. 17.

The brakeman, Stevens, was in the employ of the defendant and at the time of the injury was one of the persons engaged in operating the freight train. We are of the opinion that, under the acts appearing in the evidence, there was no error in permitting the case to go to the jury, certainly no error of which defendant can complain.

We may close the discussion of the question under consideration by quoting from Neville v. So. Ry. Co., supra, as follows:

"It is unnecessary in this case to discuss the degree of care which is required by law to be exercised by the common carrier for the safety and protection from insult and injury of a passenger, after he is aboard its vehicle, and in process of transportation. This subject is fully discussed in Railroad Co. v. Flake [114 Tenn. 671, 88 S. W. 326, 108 Am. St. Rep. 925], and Ferry Companies v. White [99 Tenn. 256, 41 S. W. 583], supra, and the authorities in each of them cited. We are only concerned in the present case with the degree of care required while the passenger is in the station where the carrier has invited him to come and wait for his train, and where in response to such invitation the passenger is there waiting. In such case it is clear that the legal duty of the carrier is to exercise ordinary care in the protection of the passenger from insult or injury, whether caused by the negligence or by the willful or wanton acts of its own servants, irrespective of the scope of the authority or grade of employment of the servant, and a breach of this duty by the carrier fixes its liability. Under the facts of this case, the carrier cannot escape liability under its plea that the act of its servant was unauthorized, for it may be granted that the act was wholly without authority from the carrier, and yet the fact remains that by the act the legal duty of the carrier was breached, and from this breach the right of action flows, not because the carrier authorized the act, but because it did not prevent it by the exercise of ordinary care."

[4] The plaintiff at the trial sought to introduce evidence in support of the proposition that torpedoes were carried upon the train and the purpose of carrying the same. His questions, however, were objected to on the part of counsel for defendant and the objections were sustained, so that the object that plaintiff had in introducing the testimony was frustrated. What little evidence that was left in the case on this question could not have prejudiced the defendant as to the issues submitted to the jury. Defendant could have moved to strike it out or could have requested an instruction to the jury to disregard it, if it was calculated to mislead. United States Smelting Company v. Parry, 166 Fed. 407, 92 C. C. A. 159.

[5] We have examined the testimony of Dr. Lanier and find that any objection, which was properly made, was sustained by the trial court. We do not think the criticism of the court's charge on the measure of damages has merit. There was no charge which allowed a recovery for mental suffering unconnected with the injury. It is doubtful, moreover, whether the exception to the charge was sufficiently definite to raise the question. The remark made by the trial court in ruling upon the question as to the liability of the defendant for the act of the brakeman could not have been prejudicial in view of the manner in which the case was submitted to the jury. Whether or not the verdict is excessive cannot be reviewed on writ of error. Counsel for defendant cites the decision of this court in the case of Bowen v. Illinois Central Railway Co., 136 Fed. 310, 69 C. C. A. 444, 70 L. R. A. 915, as completely sustaining his contention as to the liability of the defendant for the act of the brakeman. It is sufficient to say that the case cited was not a passenger case.

We find no error in the record, and the judgment below must be affirmed.

And it is so ordered.